**Petition of SIMS, et al.**

Railroad & Public Utilities Commission.

September 13 and October 24, 1955.

J. B. Rodgers, Rodgers & Kirkland, Orlando, for L. H. Sims, petitioner.

Lewis H. Hill, Hill, Hill & Dickenson, Tampa, for Rockana Carriers, Inc., petitioner.

D. Fred McMullen, Ausley & Ausley, Tallahassee, for Seaboard Airline Railroad, protestant.

G. L. Reeves, Tampa, for Atlantic Coast Line Ry. Co., protestant.

Chairman WILBUR C. KING, commissioners JERRY W. CARTER and ALAN S. BOYD participated in the disposition of this cause.

BY THE COMMISSION.

*September 13, 1955:* This is a joint petition for approval of the transfer of certificate of public convenience and necessity #460 from L. H. Sims to Rockana Carriers, Inc., which authorizes the transportation of fertilizer and fertilizer materials in limited common carriage from, to and between all points and places in the state of Florida. The authority presently covered by the certificate to transport fertilizer and fertilizer materials was granted by this commission's order #2074 entered on October 17, 1947 in docket #1087. At that time L. H. Sims, d/b/a Robinson's Transfer, held certificate of public convenience and necessity #304 authorizing the transportation of household goods. Sims had obtained the certificate through transfer of the same to him by this commission's order #1637 entered August 26, 1943. Sims' 1947 application for authority to transport fertilizer and fertilizer materials was an application to extend his certificate #304 which he already held, to authorize such additional transportation. A public hearing was held on the application for extension, as is shown by order #2074, on July 25, 1947 in Orlando, pursuant to notice of July 8, 1947. The commission, by said order, found that public convenience and necessity were proved and extended certificate #304 to authorize the transportation of fertilizer and fertilizer materials from, to and between all points and places in the state.

Later, on October 8, 1953, in order #2903 the commission approved the transfer of a portion of certificate #304 (which authorized the transportation of household goods) from L. H. Sims to F. D. Bloodworth, d/b/a Orlando Transfer & Storage Co. Thereafter, upon being notified by the joint applicants, Sims and Bloodworth, that the transfer had been effected, the commission on October 21, 1953 entered its order #2914 canceling certificate #304—and reissuing new certificates to effect the split of the authority therein. Certificate of public convenience and necessity #461 was issued to F. D. Bloodworth, d/b/a Orlando Transfer & Storage Co., covering the operating rights for transportation of household goods, and certificate of public convenience and necessity #460 was issued to L. H. Sims covering the authority which he retained for common carriage of fertilizer and fertilizer materials from, to and between all points and places in the state. It is this latter certificate, #460, which the joint applicants here now seek authority to transfer to Rockana Carriers, Inc.

At the beginning of the hearing the two protesting railroads made a motion to continue the hearing, which we denied. They then moved to dismiss the application for transfer, contending that certificate #460 is void, which we also denied. Among the grounds for the motion they alleged that the notice of hearing on the transfer of certificate #304 from Robinson to Sims in 1943 (several years before the aforesaid extension was granted authorizing the transportation of fertilizer and fertilizer materials) was not shown by the commission file to have been sent to certain parties. They further alleged that the notice of hearing on the application for extension of certificate in 1947 was not shown by the commission file to have been published and sent to certain parties. No allegation was made in either instance that such notices were not sent to protestant railroads.

The railroads further objected that the application for extension of certificate made in 1947 was not verified and that applicant did not agree as required by statute to abide by all tariffs and classifications as to the carriage for which authority was sought which might be prescribed by the commission from time to time. The railroads have been at liberty since 1943 and 1947 to file a formal complaint with the commission pursuant to rule VI[1] of our rules of practice and procedure. Under such rule a copy of the complaint would be served upon the carrier complained against and it would have an opportunity to file an answer and the parties would then be heard by the commission on that particular issue. Instead of following proper procedure, protestant railroads have waited until this hearing and in this manner attempt to inject the aforesaid questions into this hearing on transfer without any previous notice to the joint applicants.

Section 350.12(m), Florida Statutes 1953, provides—"Every rule, regulation, schedule or order heretofore or hereafter made by the commissioners shall be deemed and held to be within their jurisdiction and their powers, and to be reasonable and just and such as ought to have been made in the premises and to have been properly made and arrived at in due form of procedure and such as can and ought to be executed, unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the contrary so appears. All presumptions shall be in favor of every action of the commissioners . . ." Under these provisions it is apparent that order #1637 as well as order #2074 of 1943 and 1947, respectively, were presumably properly made and arrived at in due

---

[1] Editor's note—Rule VI may be found on page 240 of vol. 4.

form of procedure. The burden is clearly upon the protesting railroads to show their invalidity. The questions should not be tried on this application for transfer, but should have been raised some time ago (if the railroads cared to raise them) by formal complaint in accordance with the commission's rules of practice and procedure.

As a somewhat analogous proposition, section 323.10 of the statutes provides that whenever it shall appear that any auto transportation company holding a certificate of public convenience and necessity for common carriage has failed to operate over any route or schedule or to any point or terminal for a period of 90 days, the commission on its own motion or upon complaint shall immediately revoke such certificate, or the part of such certificate covering the route, territory or terminals involved.

The following listed decisions disclose that this commission has consistently declined to cancel a certificate for non-operation, where protestants have waited to register their complaint until after the filing of a petition for transfer of the certificate. See order #2323 dated August 17, 1949, docket nos. 2209-MC and 893, in re complaint of Milton Coach Line v. Capital Motor Lines; order #2369 dated March 16, 1950, docket #2059-MC, in re amended joint petition of Poinciana Transfer, Inc. to the Murphy Construction Co.; order #2382 dated June 5, 1950, docket nos. 2472-MC and 2384-MC, in re complaint of John H. Mitchell v. Tamiami Trail Tours, Inc.; order #2383 dated June 8, 1950, docket nos. 2416-MC and 284, in re joint petition of the administrator of the estate of Ernest W. Cruickshank, transfer to Weathers Bros. Transfer Co., Inc.; order #2412 dated August 22, 1950, docket #3053-CCB, in re joint petition of Hartsell Bros. d/b/a Tam-Beach Coach Line, Inc. to Southern Tours, Inc.; order #2604 dated September 7, 1951, docket #3106-CCT, complaint of Leonard Bros. Transfer & Storage Co. v. W. A. Dickinson Transfer Co.; and order #3052 dated September 13, 1954, docket #3855-CCT, petition of Southern Transfer & Storage Co., Terminal Van Lines, Goodall Bros. and Caldwell Bonded Warehouse, for the cancelation of certificate of public convenience and necessity #163.

Such principle was approved by the Supreme Court of Florida in University City Transfer Co. v. Florida Railroad Commission, 168 So. 413.

During the hearing the railroads while cross-examining the joint applicants attempted (over objections of the applicants sustained by the commission) to inject questions of public convenience and necessity into the transfer proceeding in an effort to show that

the operation of the certificate would have an adverse effect on protestants' operations. They contended that the commission should restrict the certificate in such a way that it would have the effect of canceling out a part of it as to territory which could be covered or as to commodities which could be transported. They pointed to section 323.03 (5) relating to transfers of common carrier certificates, which provides in part—". . . and the commission may reasonably alter, restrict or modify the terms and provisions of any such certificate, or impose restrictions on such transfer where the public interest may be best served thereby, or transportation facilities within the territory or on the route involved may be safeguarded or improved in the interest of the public."

We consider that the restrictions contemplated by said section are of the type the commission has required in previous certificate transfer cases—such as a restriction which would prohibit a transferee carrier from connecting the certificate transferred up with a certificate already held by such carrier to provide a through service where none existed prior thereto, or a restriction requiring that monies due to a protesting carrier by the transferor (as a result of interline agreements) be paid. See order #706 dated November 2, 1934, docket #100-6, in re joint petition of St. Johns River Line Co. and McLeod Line, Inc. for approval of transfer of certificate; and order #2407 dated August 10, 1950, docket #3021-CCB, in re joint petition of J. E. Cannon and C. B. Cannon, d/b/a Coastal Stages and Coastal Stages, Inc., for approval of transfer of certificate.

Under chapter 323 the only way that any part of an existing certificate may be canceled is through failure of the certificate holder to operate, or through violation by the certificate holder of law or the rules and regulations of the commission, sections 323.09 and 323.10. We do not believe that the legislature by subsection (5) of section 332.03 intended that a certificate of public convenience and necessity might be partially canceled either territorially or as to commodities simply because competition by the transferee might adversely affect an existing carrier. If such were the case the transferees of all certificates (when there are protesting carriers) would be called upon to prove public convenience and necessity all over again upon an application for transfer. It was certainly not contemplated that such be required on transfer of a certificate. The Supreme Court has held that public convenience and necessity is not a proper consideration on applications for transfer of certificates. See University City Transfer Co. v. Florida Railroad Commission, 168 So. 413, where the Court said at page 415—"And so

it is, unless the certificate was revoked there was no necessity for the transferee of the certificate to show the existence of public convenience and necessity as would be required to support an original application for the issuance of such certificate."

The protesting railroads offered no affirmative testimony which would have any bearing on the transfer of this certificate. Each railroad simply put one of its officials on the stand who testified that his railroad had not had time to prepare for the case. It appears, however, that if additional time were granted to the railroads they would only produce testimony relating to the adverse effect which this transfer might have upon their operations.

We do not consider that such testimony would be relevant to this proceeding. The required 15 days statutory notice of hearing was given. Protestants did move that the commission incorporate in the record the testimony taken before a commission examiner on the application of Haulsmore, Inc. for a certificate authorizing the transportation of phosphate and other commodities including fertilizer and fertilizer products between all points and places in Florida for the purpose of showing that the approval of this transfer might have an adverse effect on protestants. The Haulsmore application was an application for original certificate and not an application for approval of transfer of an existing certificate as in the present proceeding. Several volumes of testimony were taken in that cause and it culminated in commission order #2048 entered on July 21, 1954 in docket #3913-CCT wherein we found that because of the particular nature of the transportation there testified to, some of it was exempt from the commission's jurisdiction under section 323.29 of the statutes and the remainder was in interstate commerce. Rockana Carriers, Inc., the transferee here, was not a party to that proceeding, but it and Haulsmore, Inc. have practically the same officers. L. H. Sims, the transferor in this proceeding, was not a party to the Haulsmore application and if the testimony in that case were incorporated in the record in this case such would deny Sims the right of cross-examination of the witnesses. Further, we do not consider the testimony in that case relevant to this proceeding. The motion to incorporate such record in this proceeding was denied.

At the conclusion of the hearing protestants renewed their motion to dismiss and added two additional grounds—that the transferor had failed to file with the commission tariffs required by our rules, and had failed to file with the commission annual reports or reports of operations. We have not generally required strict compliance with these requirements of the rules on applications for transfer.

No objection was made as to these points by the protesting railroads until the conclusion of the hearing. We consider that such objections should have been more timely made. The commission at this point is not so much concerned with what the applicant has done as with the transferee's ability to carry on a proper operation under the certificate in service to the public.

After due consideration of the testimony and evidence adduced in this cause the commission finds that the transferee is qualified, financially and through experience of its officers and directors in the transportation field, to conduct the proposed transportation service. The joint petition for approval of the transfer of certificate of public convenience and necessity #460 from L. H. Sims to Rockana Carriers, Inc., which authorizes the transportation of fertilizer and fertilizer materials in limited common carriage from, to and between all points and places in Florida, is approved. Upon effecting such transfer the joint petitioners are ordered to notify the commission thereof in order that the certificate may be canceled and reissued in the name of the transferee. The transferee is ordered to file with this commission evidence of compliance with its rules governing insurance.

*October 24, 1955:* On September 28, 1955 protestants filed a petition for rehearing and for a stay of our order of September 13, 1955. We granted the petition for rehearing so that we might review our rulings and actions in this proceeding. Full consideration has been given to the objections raised in the petition.

One of the primary grounds of protestants' motion to dismiss was the contention that the notice of hearing on July 25, 1947 on the application for extension of certificate #304 (predecessor of certificate #460) was not shown by the commission file to have been published and sent to certain persons. The commission file in that proceeding did not contain a proof of publication of the notice, such proof of publication having evidently been lost from the file. Another proof of publication has now been received from the Sanford Herald, Sanford, Florida, showing said notice was published in the July 11, 1947 issue of that newspaper. Such proof of publication has been filed in said docket.

As to protestants' further contention that the commission file does not show that notice of the aforesaid hearing was sent to certain persons, chapter 323 includes no requirement that this commission maintain in its files proof of the individuals to whom it sends its notices. Under section 350.12(m), quoted in part in our prior order, all orders of the commissioners shall be deemed and held to be within their jurisdiction and their powers and to have

been properly made and arrived at in due form of procedure unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence, etc. Protestants have not alleged that any defect appears on the face of the aforesaid order extending certificate and they have failed to produce evidence that said notice was not sent to all interested persons. Furthermore, as we pointed out in our prior order, no allegation was made by the protesting railroads that notice was not sent to such railroads. They are in no position, particularly at this late date, to complain that the commission file does not show notice was sent to third persons in 1947.

L. H. Sims, the transferor, and Rockana Carriers, Inc., the transferee, have advised the commission that the transfer of certificate #460 has been effected.

It is ordered that—(1) our order of September 13, 1955 is affirmed and protestants' request for a stay thereof is denied; (2) certificate of public convenience and necessity #460 is hereby canceled; and (3) that certificate of public convenience and necessity #460 is reissued to Rockana Carriers, Inc., P. O. Box 426, Tampa, authorizing the transportation of fertilizer and fertilizer materials in limited common carriage from, to and between all points and places in Florida.