ROBERTS, Justice.
This cause is before the court on petition for certiorari to review an order of the Florida Railroad and Public Utilities Commission granting a joint application of the respondents, Commercial Carrier Corporation and Tropical Transport, Inc., for transfer to Tropical of a portion of Certificate No. 480 theretofore issued to Commercial by the Commission. Petitioners are common carriers who filed objections to the transfer.
Application for the transfer of a portion of Commercial’s Certificate No. 480 was made under the authority of § 323.-041, Fla.Stat., enacted as Ch. 57-260, Laws of 1957, F.S.A. This statute provides that a certificate may be divided as to route or territories “provided the commission finds that such routes or territories are clearly severable and the division thereof does not permit the creation of duplicate operating rights.” It also provides that “No division of certificate rights * * * based upon the class or classes of property authorized to be transported shall be approved, unless it appears to the satisfaction of the commission that the part of the operating rights sought to be transferred, sold or assigned is, because of a difference in the nature or type of the service rendered, * * * clearly distinguishable and severable from the remaining operating rights; * * * ” This is apparently the first specific statutory authority for and regulation of the transfer of a portion of a certificate of public convenience and necessity, although such transfers appear to have been approved by the Commission in the past. See Uni *842 versity City Transfer Co. v. Florida Railroad Commission, 1936, 124 Fla. 308, 168 So. 413.
The facts here are that Commercial is authorized under various certificates of convenience and necessity (all consolidated in Certificate No. 480) to haul cement and cement mixes, livestock feeds, lumber, pulpboard and beer, between all points in Florida over irregular routes. By its application it sought to transfer to Tropical its right to haul cement and cement mixes from Flagler County and from north of the Tamiami Trail in Dade County, to all points in Florida. The practical result of the transfer is stated to be that Tropical will haul cement and cement mixes from the Lehigh Portland Cement plants in Flagler Beach and Dade County, and Commercial will continue to haul cement arid cement mixes from the General Portland Cement plants in Tampa and in Dade County, the origin points of each being exclusive of the other. It was shown that Commercial has been hauling from Le-high’s plants under a temporary leasing operation but that its plants had been planned for and its facilities built for the type of service that Tropical would furnish; and that, if the joint application of Commercial and Tropical were not approved, Lehigh would purchase Tropical’s equipment and operate as a private carrier.
The Commission found that the effect of the transfer will be to divide the certificate both as to commodities and as to territory, and that the certificate was “clearly severable” in both respects. The application was accordingly granted.
The petitioners argue here that, as to territory, the statute should be construed as authorizing the transfer of a portion of a certificate only within a particular area, such as to and from points entirely within Flagler or entirely within Dade Counties; and that. to construe the statute as authorizing the splitting off of a place of origin, alone, with operation throughout the entire state to any place of destination,, amounts to “the creation of duplicate operating rights” contrary to the express terms of the statute. As to the transfer of a right to haul a particular commodity, the petitioners contend that “it was clearly the intention of the Legislature to prohibit a transfer of this kind unless the operating authority of the transferee was confined to a particular territory from which the operations of the transferor were excluded”; and that, since both Commercial and Tropical will be hauling cement, and possibly over the same routes, with the same type of equipment, such a transfer is not within the intendment of the statute.
In the briefs filed on behalf of the respondents, it is pointed out that, if the certificate were split in the manner proposed by petitioners, the two large cement manufacturing plants located in Dade and Flagler Counties and their consignees could not obtain statewide service from either the transferor or the transferee, and that such would obviously not be in the public interest. We agree.
This court said in Green v. Stuckey’s of Fanning Springs, Inc., Fla.App.1957, 99 So.2d 867, 868:
“While not necessarily controlling, as where made without authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of a statute by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction ‘except for the most cogent reasons, and unless clearly erroneous.’ Wilkes & Pittman v. Pittman, Fla.1957, 92 So.2d 822, 825 and cases cited; Gay v. Canada Dry Bottling Co., Fla.1952, 59 So.2d 788, 790.”
We find nothing “clearly erroneous” in the Commission’s interpretation of the statute as authorizing the transfer in question. *843 Accordingly, certiorari should be and it is hereby
Denied.
THOMAS, C. J., and THORNAL, O’CONNELL and DREW, JJ., concur.